Case No. 5, Appeal 16-3134, United States v. Anderson. Doing yeoman work today, Mr. Mullins. Economizing for my clients. I know. My name is Brian Mullins, as you now know, and I am representing Deandre Anderson, the appellant in this case. The government has conceded that the district court's restitution order in this case exceeded that which was allowed by law. The restitution order was $4,131. The government now states that the correct amount of restitution is $4,091. And on that basis alone, we believe the court should remand the case for the district court to recalculate restitution. Now, given that the bills were damaged as a result of Mr. Anderson's criminal activity, why does the bank's ability to eventually replace those bills matter for purposes of restitution? He not only helped steal those bills, but he was, in a real sense, responsible for the fact that they were marred by the red, you know, the dye pack. And the bank has lost the use of those bills for some period of time at least, so why not include them in the restitution amount? Well, I think they were returned in a sense in that the government now has possession of them. And the statute states that if returning the property is impossible, impracticable, or inadequate, then the defendant must pay restitution. And we do not believe that the record as it stands shows that it was impossible or impracticable or inadequate for the bank to recoup those bills from the Department of the Treasury based on the information that we have provided in the opening brief regarding the Treasury Department's regulations for replacing damaged money. Now, we believe the record is sufficient for the district court to make that, or I'm sorry, for this court to make that finding that it was not impossible or impracticable or inadequate for the bank to recoup that money. However, I think we would not oppose if this court were to remand the case for restitution to make, for the district court to make additional factual findings on that issue, specifically whether it is impossible, impracticable, or inadequate for the bank to recoup that money. I'm trying to imagine the district judge's response to that remand. Over a $2,000 difference about some damaged bills. Let me ask you if I could, Mr. Mullins, about waiver here. Yes. This is an adversary process in the district court. You seem to be arguing that unless one can divine a strategic reason for letting the issue go, then we should not treat it as a knowing and intelligent waiver, right? That is one aspect of our argument on waiver. Our waiver laws, I confess, something of a mystery to me. But if in trial the prosecutor says, I offer government Exhibit 1, the defense replies no objection, that's a waiver of any objections, right? Correct. Without asking whether there were strategic reasons or whether the counsel explained all potential objections to his client and the client agreed, right? Correct. Same thing with jury instructions. The judge says, here's how I plan to instruct, no objections. We treat that as waiver, right? Correct. Again, without kind of exploring the strategic or psychological aspects of that decision. Correct. So why should this be different? Since it's very clear that there were opportunities to object in both of the sentencing hearings and the defense made no objection. Well, I think there's a general response to that question and a specific response to the question. My general response is that- You can help us straighten this out. I would welcome that. My general response is that courts construe waiver in favor of the defense when it comes to issues on appeal. And that is a longstanding- Sure. Well, what about the trial exhibit or the jury instructions? It turns out there was a hearsay objection that could have been raised. And, you know, oftentimes that issue would be reviewed for plain error at least. So there is the difference between waiver and forfeit. And we concede that this case should be reviewed for plain error. You know, I think in the case of evidence that is admitted over or without an objection by counsel, that issue would often be reviewed for plain error rather than a finding of waiver. So- I thought we just agreed that no objection means waiver. There are plenty of opinions where people try to get out of that and will say, well, it doesn't matter because we'd affirm on both grounds. Well, on this issue, we are arguing that really two things. One is that there could not have been an intentional waiver because the amount was never properly calculated by either the pre-sentence report, which came up with an amount of $3,676 in restitution, and then the government at the sentencing hearing came up with the amount of $4,131. And now the government says the correct amount is $4,091. So we do not believe there could have been a knowing waiver of the issue because the proper amount was never presented to the defense in this case. And then there's also more of a legal issue, which is based on the cases that we've cited from other circuits, holding that if the appellant's argument is that the restitution order exceeded that which is allowed by statute, that issue cannot be waived because it's similar to a sentence that would exceed the statutory maximum. And we are asking the court to follow those holdings. Are you suggesting that a factual dispute about the appropriate amount of restitution can never be waived, resolved by agreement, if you're going to stick to your analogy to a sentence above a statutory maximum? Well, I think that is, you know, I think it depends on the factual dispute. But, you know, I think that is the holding of those courts. They don't seem to make any limitation. If the issue is that restitution exceeded that which is allowed by statute, it cannot be waived. It doesn't mean it can't be forfeited and reviewed for plain error, but that it cannot be waived. Now, it could be, I believe, part of a plea agreement where it's waived and the defendant acknowledges that as part of a plea agreement. A plea agreement can't agree to a sentence above the statutory maximum, can it? No. So I don't understand this parallel. Well, I think that is the parallel because it is comparable to a statutory maximum.  The predicate for a statutory maximum is usually an indisputable court record identifying the offense of conviction, right? Right. What you're telling us is that all sorts of messy factual issues about just how much particular victims lost in particular financial crimes, whether it's a robbery or a fraud, or causation in fraud cases can be just god-awful messy, that that can never be resolved by agreement. It's always available to dispute again on the theory that it's above the statutory maximum. That can't be right, can it? We're not saying it can't be resolved by agreement. Certainly, a plea agreement could come up. You just told me that if you're using the statutory maximum sentence analogy, that cannot be resolved by agreement, and a court could continue to address that despite a waiver, an apparent waiver. But I don't understand your position. You seem to be backing away from that. The restitution amount could be agreed to in a plea agreement, certainly. But on appeal, you're telling us that could always be attacked, aren't you? Yes, we are, and that it can't be waived as if it just says the statutory maximum can't be waived. Because the statutory maximum in a restitution case is the value of the property on the date of the loss. So if the argument is that the restitution order exceeded the value of the property on the date of the loss, that would be comparable to the restitution order exceeding the statutory maximum. Okay. We made your trip worthwhile. Okay. Ms. Watzka. Good morning, Your Honor. To me, it pleads the court. I'm Kelly Watzka. I represent the United States. I want to start first. I want to talk a lot about waiver, not surprisingly. I'd like you to explain why the government is fighting this case. Why the government is fighting it? Because on the Have you tried to exchange the money for new bills? No, Judge. So how do you know they can't be replaced? I don't know. But I think that the defendant's position here really unfairly puts the onus on the victim bank to navigate through that process, which on its face appears to be one that is discretionary, subject to this sort of special review process, and also subject to settlement. It's not at all clear that the bank would be made whole by virtue of that process. Well, why should we guess? Yeah, why are we guessing? Well, because the money was introduced as an exhibit at the defendant's trial, the defendant's co-defendant and brother's trial. And it's the government's prerogative to introduce what it used to be the most compelling evidence. In this case, and the case was tried by one of my colleagues, but in this case my colleague decided that actually showing the jury the burned and dye-stained money had some value. So it's actually in the court record. But the reason, you know, I wanted to talk about waiver, Judge, because I agree with you. If this case doesn't constitute waiver, it's hard for me to imagine one that would. You've made your position clear. I still don't understand why you're arguing about it. The money is in the government's custody, right? There's been no attempt to try to determine whether it can be. Let's suppose it weren't damaged. Would the fact that it's being used as an exhibit mean that the defendant has to pay the bank back? No, the fact that it wasn't. There was money that was recovered, $561 that was recovered that was not damaged. And what we're talking about here is an offset, right? We're not talking about the total loss. We're talking about an offset. The defendant bears the burden of establishing his entitlement to an offset. This wasn't an illegal, as the defense has suggested, an illegal restitution order, which, you know, ordered the defendant to pay more than what he took from the bank. That's a very different issue. What we're talking about here is whether he's entitled to have that amount reduced by a certain amount. That's where the dispute lies here. Yeah, but are you saying that if the damaged bills are usable, they're usable, that he still has to pay that? I'm not saying that, but what we're talking about here, the $2,100 is not usable. We don't know that. It's exchangeable. We don't know that. Well, that's the point. Right, because it was raised for the very first time in his second appeal before this court. And I'll be honest, Your Honors, I never heard of this exchange program before. The first time I ever heard about it was when it was raised in this brief in his second appeal before this court. I'm tempted to tear this dollar bill in half. But there's a difference, Judge, between tearing a bill in half and having a bill go through an explosion. No, there isn't. It is, according to the website cited by the defense attorney. The website cited in the brief says there's a special process when we're talking about mutilated currency. That's what we're talking about. Mutilated currency. If this judge tears that dollar, I'll commit suicide. Not according to the website. But. Please don't. Mutilated currency is defined by the website that's cited as currency that has gone through, that is more than one-half of the bill has been destroyed by fire, chemicals, or an explosion. And that's, so that's not the same thing. And that's. Has anybody looked to see whether there's more than half of the bills left? No, I have not, Your Honor. Isn't that kind of the crux of this issue? I don't think so. Because, again, we're talking, first of all, we're talking waiver and we're talking plain error. Forget about waiver for a minute. This is, I can't believe we are having this argument, frankly. And nor can I. You traveled. You traveled from. Because I have to. Because it was raised for the first time. You traveled here from Milwaukee. Yes, sir. And Mr. Mullins traveled here from. Moline. Central Illinois. We're all here arguing about something we don't know the least bit about factually. And all over $2,100. You're right. And it's because the defendant never brought this to the district court's attention. And this court has held in the Martin case that we don't expect district courts to be clairvoyant. If there is a pertinent or salient fact that's relevant to the issue of restitution and the court doesn't address it, then that's on the defendant. Maybe the judge should have said can these bills be replaced. I don't know if that was the judge's obligation or not. It's not that this was hidden from the judge. First of all, we have two different judges here. We have Judge Randa at the first sentencing hearing. And, unfortunately, he was unable to continue presiding over the case. At the defendant's appendix at 3 and 4, we've got sort of the colloquy that's laid out before the judge there. And in that colloquy where, again, I'm admitting my $40 math error, we have reference to about $2,107 was recovered, but they were burned and stained. They're non-usable. So it's brought to the court's attention. The defendant signs off on it there. The judge says, is that right, Mr. Anderson? And Mr. Anderson's attorney at the time says, yes, Ms. Watzka talked to us about it this morning. We agree. And I've talked to my client. And we agree. And then it's later before we go up on appeal. This issue was never raised on his direct appeal. And then we come back for resentencing on a Thompson issue. In the meantime, it's been reassigned to Judge Adelman, who also, in the interim, presides over the co-defendant and brother's jury trial and saw those bills going into evidence and knows that they're now in the court's possession. And so, again, at the resentencing hearing, is there any issue with restitution, Mr. Anderson? No, there's not. So I don't think the onus is on the government under those circumstances or the district court. The onus is on the defendant to raise the issue. It's his burden to establish that he is entitled to an offset. And I know it's $2,100. But it's kind of the principle of the thing from the government's perspective. Unless the court has any further questions, I will simply ask the court to affirm. Thank you. You can come back two minutes. It's the government's burden to establish the proper amount of restitution. And where the government had possession of this money that was stained, I think it's not unreasonable to ask the government to take that step of determining if it's replaceable. It is within the same executive branch with the Treasury Department. So, you know, as far as burden shifting, the initial burden is on the government. And $2,100, it's not insignificant, I don't believe, to Mr. Anderson. He is indigent. I think he's serving a prison sentence. I believe money is already being subtracted from his prison account. So the $2,100 is not insignificant to Mr. Anderson. As we said, we believe that we do not oppose if the court remands the case for further factual finding, which we believe the government's presentation demonstrates is necessary. And unless there are further questions, we have nothing else. Thank you very much. The case will be taken under advisement.